HERMAN M. SYPHERD, TRUSTEE, PLAINTIFF IN ERROR,
v. CHARLES R. MYERS, DEFENDANT IN ERROR.

Argued July 11, 1910—Decided March 6, 1911.

A judgment for plaintiff in error for nominal damages, although
erroneous, will not be reversed if he was not entitled to any
damages.

On error to the Supreme Court.

By this writ of error Herman M. Sypherd, trustee in bankruptcy of Channell Brothers, seeks to reverse a judgment of the Supreme Court entered upon a verdict directed in his favor for six cents damages against Charles R. Myers, whom plaintiff in error had sued for the breach of an option given to his bankrupts.

Myers had leased the Piedmont Hotel to Channell Brothers for one year. The lease gave to the lessees an option to purchase the property for $57,000 if the lessor should obtain title during the term. The term expired without the fulfillment of this condition and was renewed for one year from June 1st, 1900, at a higher rental, with a purchase price of $62,000 under a similar option. During this term the lessees defaulted wholly in the payment of their rent and about August 25th, 1900, notified Myers that they could not pay him any money at all and would have to get out. They went out of possession and Myers went in. On September 4th Channell Brothers were adjudged bankrupts. On September 8th Myers obtained title and on September 12th tendered it to Channell Brothers who, without disclosing the bankruptcy proceeding, informed Myers that they were not in a condition to comply with their agreement; whereupon Myers, on September 15th, sold the property to one Bechtel. On October 15th, 1900, the plaintiff in error was appointed the trustee in bankruptcy of Channell Brothers, and on January 3d, 1902, he began this suit for damages for the loss

of the bargain resulting from Myers' breach of the option contained in the lease. To this action Myers pleaded specially that before he acquired the title in question the lessees had abandoned their option to purchase, and had surrendered their term to the defendant, who accepted such surrender.

On the trial the defendant sustained his pleas and at the close of the testimony the court, of its own motion, directed a verdict for six cents damages, to which the defendant excepted upon the ground that he was entitled to a verdict. The plaintiff also excepted and took this writ of error.

For the plaintiff in error, *William M. Clevenger* and *George A. Bourgeois.*

For the defendant in error, *Clarence L. Cole.*

The opinion of the court was delivered by

GARRISON, J.   If the trial judge was right in directing a verdict for the plaintiff in error he was wrong in limiting the recovery to nominal damages, for, if the defendant was liable to the plaintiff at all, there was testimony that should have gone to the jury in support of a more substantial measure of damage.

This error does not, however, entitle the plaintiff to have the judgment for nominal damages reversed if it conclusively appears that he was not entitled to a judgment for any sum.

We think that this does conclusively appear in two different aspects of the case.

First, because Channell Brothers, prior to their being adjudged bankrupts, abandoned their option from inability to comply with its terms and so notified Myers, who, in good faith, acted upon it. The facts in respect to this are uncontroverted.   There was no contract of sale between Channell Brothers and Myers, *i. e.,* no mutual undertaking by which the former agreed to purchase the property and the latter to make them a deed for it; what Channell Brothers got by the option was a right to purchase for $62,000, providing

that when Myers should obtain title and signify his purpose to convey the same to them they should *at once* comply with the conditions as to payment.

The obligation of Myers under this provision involved a duty of tender, the performance of which could, upon familiar principles, be waived by the Channell Brothers, and such duty would, upon like principles, be deemed to be waived by unequivocal declarations on their part evincing that such an act would be wholly unavailing. Such was the case established by the uncontradicted testimony.

The situation was this: By August 25th, 1900, the Channell Brothers were, and knew that they were, bankrupts in fact. On the rent of the hotel they had defaulted in every payment; the note given for the first $2,000 was not paid and they had defaulted in the $1,000 payments due July 20th, July 30th, August 8th, August 15th, and August 25th. At about this last date they told Myers, in response to his importunities for his rent, "We are done. We have got to get out, we can't pay you any money at all. We haven't got any money." Myers then asked them about the agreement, which, although it permitted a large sum to remain on mortgages, called also for a considerable cash payment. "They said," quoting from the testimony, "they didn't want nothing to do with it and didn't have anything to do with it. * * * They said they didn't want nothing to do with it." This unequivocal declaration, coupled with the admitted fact of their hopelessly impecunious condition, rendered it entirely useless for Myers in any merely formal manner "to signify his purpose to convey the property to them" and relieved him from the performance of such a palpably nugatory act. The fact that a few days later Myers made a tender, which was declined, while it does not help his legal position, since it was after the adjudication of bankruptcy, was evidence of his good faith; it was at most a superfluous act on his part, and yet it is upon the technicality that this tender was made to the wrong party that the trustee in bankruptcy has built up his case. If there had been no such tender, Channell Brothers could not have waited until Myers, relying

upon their declared abandonment of their option,. had sold the property and then come upon him for damages. The right of their trustee rises no higher. If,. therefore, the date of the conversation referred to is conclusively fixed by the testimony as prior to the adjudication in bankruptcy I am clearly of the opinion that Myers' duty to Channell Brothers was at an end and that no right against him passed to the plaintiff as their trustee.

Inasmuch as the establishment of this date is equally pertinent to the other aspect of the case and rests upon the same testimony, I shall defer its consideration until this second point has been stated.

The second point is that the title to the property was not obtained by Myers during the continuance of the lease, which was the condition on which the right of purchase by Channell Brothers depended. The giving up of possession by Channell Brothers and its acceptance by Myers, which was specially pleaded by the latter, was conclusively established at the trial by testimony of acts that by operation of law constituted a surrender.

The testimony referred to was as follows: Channell Brothers, in the conversation already referred to, told Myers that "they had got to get out" and that "they were going to get out." This was followed by testimony that "they went out of possession" and that Myers got possession, and counsel for the plaintiff elicited the positive testimony that Channell Brothers gave up the possession to Myers. To the question "How did you get possession?" the answer was, "Well, they gave it up themselves." This testimony, which was entirely uncontradicted, evinced a surrender by act and operation of law, and hence was within the exception made by the statute of frauds.

The essentials of this recognized mode by which the relation of landlord and tenant may be terminated were stated by Mr. Justice Collins in the case of *Meeker* v. *Spalsbury, 37 Vroom* 60, and the statement there made was approved and adopted by this court in the more recent case of *Miller* v. *Dennis, 39 Id.* 320. The text is: "When the minds of the

parties to a lease concur in the common intent of relinquishing the relation of landlord and tenant and, execute this intent by acts which are tantamount to a stipulation to put an end thereto, there at once arises a surrender by act and operation of law."

Where the act relied upon is equivocal the fact that it is in execution of a common intent must be established as other controverted questions of fact are established in courts of law, but where the intent is unequivocal, provided the act itself be established, a surrender by operation of law at once arises.

To state the matter in another way: The statute of frauds gives effect to the intention of parties, not reduced to writing, only when such intent is executed by the act of the parties themselves. Under this rule the intention of the parties is deemed to be manifested by the acts they mutually perform, which may be either equivocal or conclusive; if the former, a jury question is presented; if the latter, a court question only; but with the operation of law upon an unequivocal act the intention of the parties has nothing whatsoever to do, hence such a case presents a question of law only. That a surrender by operation of law in such a case does not result from the intention of the parties is forcibly illustrated in the case of the acceptance of a new lease by the lessee. In *Johnstone* v. *Hudlestone, 4 B. & C.* 922, Mr. Justice Bayley said: "When a lessee during the term accepts a new lease from the lessor, as the second lease cannot be good unless there was a previous surrender of the first, and as the lessee, by accepting the second lease, admits the ability of the lessor to demise, the law, that the second lease may take effect, works a surrender of the first." In such cases, it will be observed, the surrender is not the result of intention; the surrender is of law, and takes place independently of the intention that such should be the legal effect of the act done.

Mr. Finlason, in his admirable treatise on pleading, deals with this question at length and, speaking of the case of the taking of a second lease, says: "It would not at all alter the case to show that there was no intention to surrender the particular estate or even that there was an express intention

to keep it unsurrendered. In all these cases the surrender would be the act of the law, and would prevail in spite of the intention of the parties. In all these cases the owner of the particular estate, by granting or accepting an estate or interest, is a party to the *act* which *operates* as a surrender."

That the giving up of possession to the landlord, if acted upon by him, is such an act is the established rule tersely stated by Mr. Justice Tindal in *Dodd* v. *Acklom,* 6 *M. & G.* 672: "A change of possession by the consent of both parties amounts to a surrender by operation of law."

It remains therefore only to fix the date of the unequivocal act by which such a surrender at law was effected in the present case as prior to September 4th, 1900. This the testimony conclusively establishes. The proof is that the conversation between Channell Brothers and Myers was immediately followed by a distraint of the former's goods. This distraint was shown to have been made about August 25th, 1900. The possession of the hotel property was given up to Myers "shortly after the 25th" according to his testimony, and he was then given the key, which he turned over to his agent, Crowley, and Crowley testified that he had the key and that "Mr. Myers took possession of the property along in the latter part of August." This testimony, which is absolutely unchallenged, fixes as prior to September 1st the date both of the conversation and of the surrender in law by which upon either aspect of the case the Channell Brothers prior to their adjudication as bankrupts had disentitled themselves to call upon Myers for the performance of the option contained in the lease or for a purely perfunctory tender of performance.

The circumstance that these views should have led at the trial to a direction of a verdict for the defendant rather than for the plaintiff does not militate against their consideration now upon the question, not of what judgment the defendant should have had, but of what injury is done to the plaintiff by the judgment that he is seeking to reverse. The defendant cannot have the judgment that he should have had; that is his loss. He was foreclosed from moving for it by the action

of the trial court; that may have been his misfortune, but he has taken no writ of error. The plaintiff, who has taken a writ of error, shows thereby a judgment which, as far as it is in his favor, was erroneous, and, as far as he complains of it, does him no injury. His writ of error avers that error has intervened *to his damage;* this he has not shown and hence has not shown himself entitled to have the erroneous judgment reversed.

Plaintiff in error cannot complain because he is required to make out in this court the case upon which he has invoked its remedial jurisdiction and he is not, in any legal sense, aggrieved if this court decides adversely to him the questions that his case presents providing they be purely legal questions fairly raised at the trial and upon which he has had full opportunity to be heard. The question whether or not a given act constitutes a surrender in law is a purely legal one and where, as in the present case, the act on which the law operates is conclusively established beyond any controversy or jury question, the legal question thus presented may be decided by the appellate court, provided it was one of the issues raised at the trial, and one of the matters argued or presented for argument in the appellate court. The present case complies with each of these conditions. The abandonment of the option and the surrender of the lease were specially pleaded by the defendant who fully supported them by proof at the trial where the parties had an equal opportunity to litigate them. Both matters have been argued by counsel of defendant in his brief in this court and if the plaintiff's counsel has not done so it was because he did not choose to avail himself of the right of reply afforded by our rules; on the oral argument reference was pointedly made to these questions and the attention of counsel directed to them. The questions thus presented and decided negative the averment of the writ of error that the plaintiff is damnified by the judgment he seeks to reverse; upon this writ of error, therefore, the judgment of the Supreme Court must be affirmed.

*For affirmance*—THE CHIEF JUSTICE, GARRISON, SWAYZE, TRENCHARD, PARKER, BERGEN, VOORHEES, MINTURN, BOGERT, VREDENBURGH, VROOM, CONGDON, JJ.    12.

*For reversal*—THE CHANCELLOR.    1.