EDMUND WILSON, ATTORNEY-GENERAL, EX REL., R. HEBER BREINTNALL, PLAINTIFF IN ERROR, v. WILBUR F. SADLER, JR., DEFENDANT IN ERROR.

Argued June 30, 1911—Decided November 21, 1911.

1. Whether or not the conduct of an incumbent of an office in respect to an executive order retiring him therefrom constituted a surrender by him of the said office is, when conflicting inferences may be drawn, a question for the jury.
2. A judgment of nonsuit, although erroneous upon the ground upon which it was directed, will not be reversed if justified upon some other ground that should have operated upon the mind of the trial court.
3. A nonsuit is properly ordered where the plaintiff has conclusively failed to sustain the burden cast upon him by the issue, but where a nonsuit is erroneously ordered with respect to the issue, it cannot be sustained upon a point not put in issue.

---

On error to the Supreme Court.

For the plaintiff in error, *McCarter & English.*

For the defendant in error, *Edmund Wilson,* attorney-general, *Nelson B. Gaskill,* assistant attorney-general, and *Gilbert Collins.*

The opinion of the court was delivered by

GARRISON, J. By an information in the nature of a *quo warranto,* R. Heber Breintnall, as relator, challenged the right of Wilbur F. Sadler, Jr., to hold the office of adjutant-general of New Jersey. Upon the trial of the issue presented by the pleadings the relator was nonsuited upon the ground that he "had retired upon his own application; that his retirement was voluntary, not involuntary."

In order to appreciate the significance of the voluntary character thus ascribed to the relator's retirement from the office in question, and its bearing upon the legal controversy, the issue presented by the pleadings must be stated.

The information set forth that the relator, on February 25th, 1903, was appointed and commissioned adjutant-general of New Jersey and entered into the said office and performed the duties thereof until March 2d, 1909, on which day he was retired from the said office by an executive order made by the governor of the state acting upon and in conformity with an act of the legislature approved on that day (the so-called Vredenburgh act). This executive order, the information avers, was made "contrary to the will of the relator;" and without the previous sentence of a court-martial, without which, the relator averred, he could not be lawfully removed from his said office.

The ultimate controversy was the defendant's title to the office of adjutant-general; and this initial pleading of the relator, in its legal effect, was a charge that the office in question was not vacant when the defendant was appointed to fill it. Having made this essential averment the information went on to state that on April 15th, 1909, the defendant was nominated, confirmed and commissioned adjutant-general of New Jersey and entered upon and still holds the said office to the

exclusion of the relator therefrom. The issue of fact tendered, perhaps unnecessarily by the information therefore, was that the executive order by which the relator was retired from office was contrary to his will, the averment that he could not lawfully be removed from office saving by the sentence of a court-martial, being by way of inducement merely. Thus informed of the nature of the attack upon his title, the defendant, by his plea, tendered the issue thus suggested. In doing so, it was open to the defendant to make the issue he tendered turn wholly upon the relator's voluntary vacation of the office by a traverse of the issuable facts stated in the information; or to make it turn upon the relator's removal from office *in invitum* by an averment to that effect in his plea (since matters of inducement are not properly traversable). He adopted the former course by the direct allegation that on the day in question the relator vacated and surrendered the office of adjutant-general, reciting the executive order of that date and the relator's conduct in respect thereto by way of inducement, but making no averment that the relator had been removed from office otherwise than by his own acts as aforesaid. The issue thus tendered was not varied by the relator's replication that he did not voluntarily vacate or surrender the said office.

Upon the trial of the issue thus squarely presented it was error to nonsuit the relator. This error, as we see it, resulted from the trial court's giving conclusive effect to the recital contained in the executive order, viz., that it was made "on his (General Breintnall's) own application." This recital, so far from being conclusive evidence of the truth of the fact therein stated, was not even evidential of such fact, as against the relator, unless he had authorized such a statement to be inserted in said order or at least had knowledge that it was so inserted, neither of which conclusively appeared. On the contrary, as to each of these matters, conflicting inferences might legitimately be drawn by the jury. The jury could not avoid finding that the relator did not wish to relinquish his office and also that all parties concerned were acting under the belief that the relator had been legislated out of office by the Vredenburgh act, regardless of his volition in the matter, and also

that when, under these circumstances, the governor had suggested to the relator that he voluntarily withdraw from his office, the relator had informed the governor that he would not resign. In the light of these facts, it was a fair question, about which reasonable men might differ, whether the proper construction to be placed upon the relator's conduct with respect to the executive order retiring him from the office of adjutant-general was that he resigned his said office or that, in bowing to the authority of a *vis major,* he observed the forms that were proper for him to observe as an officer and a gentleman.

It was a relevant and perhaps significant circumstance that on the very day on which the governor approved the Vredenburgh act and signed the executive order retiring the relator in conformity therewith, the relator addressed a letter to the governor which began, "As I am about to retire *by operation of law,*" to which the governor in a letter of March 3d, 1909, the next day replied, "I regret that these (our official relations) are to be broken off because of the *requirements of the law.*"

Enough has been said to point out the general ground upon which we think that it was error for the trial court to withdraw from the jury the determination of the question of fact placed in issue by the parties. In view, however, of the retrial of such issue we should further point out that there was error in the overruling of the question put to the witness Godfrey: "State how you happened to insert those words in the order?" those words being "on his own application" (referring to the relator). The answer to this question by the witness who was the draftsman of the order must have thrown light upon the question whether such words were inserted with or without General Breintnall's knowledge, and hence however answered the matter thus brought out would be relevant. The objection, therefore, that the inquiry was irrelevant and immaterial was not well founded. It may also be well to draw attention to the fact that the question at issue is only indirectly concerned with the inclinations and preferences of the relator with respect to his retirement from office. The question at issue is: Did General Breintnall vacate the office of adjutant-general by re-

signing it or surrendering it; not whether such vacation, if it so occurred, was in conformity with his inclinations or his preferences. Indirectly it is true the relator's wishes and preferences in the matter are to be taken into account since it is easier to believe (in a doubtful case) that a man did that which accorded with his inclinations; and correspondingly more difficult to believe that he did that which was directly contrary to them. These secondary considerations, however, while having their proper place, must not be permitted to usurp the place of the primary issue which may be broadly stated to be: Was the condition that existed in the office of adjutant-general, after the order of March 2d, 1909, was issued, the result of General Breintnall's withdrawal from office? Upon this question the testimony, oral and documentary, is all of it relevant and none of it conclusive; which is to state that there was a jury question.

Having thus reached the conclusion that there was error in the nonsuit ordered at the trial, upon the ground upon which it was directed, the question arises whether the judgment can be sustained upon some other ground, since it is a recognized rule of appellate procedure that a judgment will not be reversed if it was justified upon a ground that should have been, although it was not, influential with the trial court. *Sypherd* v. *Myers,* 51 *Vroom* 321. It is said that such a ground exists independently of the question which, under our decision, should have been submitted to the jury; and that, even if the jury found that the relator had not surrendered his office, he should have been nonsuited upon the ground that the Vredenburgh act removed him from office and that he was not protected by the constitution from removal from office without the sentence of a court-martial; in fine, the nonsuit is sought to be justified upon the ground that the relator was removed from his office *in invilum.* The trouble with this contention is that in seeking to lay hold of the rule of appellate procedure that we have just stated, it does violence to the fundamental rule that the rights of parties are at all stages of litigation to be disposed of within the issues they have framed or tried. We have, at some pains, pointed out what this issue was in the

present case and that the fact that the relator was removed from his office *in invitum* was not within this issue. The pleadings nowhere contain any allegation of such removal unless it be the matter of inducement stated by the relator in the information, which, being neither traversed nor met by a contrary averment in the plea, is either out of the case or else to be taken conclusively against the defendant. Now, a nonsuit is ordered, under our practice, where the plaintiff has conclusively failed to sustain the burden cast upon him by the issue; but never, as far as I am aware, is a plaintiff nonsuited for a like failure with respect to a matter not at issue unless the parties have in fact so "tried out" a matter that they may be deemed to have considered the pleadings amended so as to present it as an issue. In the present case, there was no such trial of the issue of removal from office. It is true that counsel stated, as a ground for nonsuit, that the provision of the constitution forbidding removal from office excepting after a court-martial did not apply to the adjutant-general, but the injustice of supporting the nonsuit upon a point thus interjected into the case is manifest. If the removal of the relator from office had been made an issue, it would have been open to him to show at the trial not only that he was a commissioned officer, and that he had not been court-martialed, but also that he was an honorably-discharged union soldier, as practically recited in the very order that removed him from office, thus invoking not only the constitutional protection of his office, but also the personal protection of the Tenure of Office act. He could probably also have shown that an adjutant-general has no "command" from which to be "withdrawn" (under the fourth section of the Vredenburgh act), and hence have argued that that act did not apply to the office of adjutant-general—important and far-reaching questions none of which were presented by the issue that the relator had voluntarily withdrawn from office. We have not considered these questions, and express no opinion respecting them other than that, dealing as they do with a matter not at issue, they raise, by indirection, in the appellate court questions of public importance that were not placed in train for decision in the court of first instance.

The judgment of nonsuit is reversed and a *venire de novo* awarded.

*For affirmance*—THE CHANCELLOR. 1.

*For reversal*—THE CHIEF JUSTICE, GARRISON, SWAYZE, TRENCHARD, PARKER, BERGEN, VOORHEES, BOGERT, VREDEN-BURGH, WHITE, JJ. 10.